LEO KEARNEY, PLAINTIFF-APPELLANT, v. NATIONAL GRAIN YEAST CORPORATION (A CORPORATION), SAMUEL BRASS, FRANK HALE AND HAROLD GOLDMAN, DEFENDANTS-RESPONDENTS.

Argued October 17, 1940—Decided April 3, 1941.

For the appellant, *Whiting & Moore* (*Ira C. Moore, Jr.,* of counsel).

For the defendants National Grain Yeast Corporation, Frank Hale and Harold Goldman, *Winne & Banta* (*John J. Breslin* and *Walter G. Winne,* of counsel).

For the defendant Samuel Brass, *Slavitt & Slavitt* (*Arthur Slavitt,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. We are asked to decide, amongst other things, whether plaintiff's release to the defendant corporation and to its president, Samuel Brass, which release plaintiff alleges was induced by the fraud of all the defendants, bars plaintiff's action at law for deceit against any or all of the defendants.

The plaintiff, Leo Kearney, and the defendants Samuel Brass, Frank Hale and Harold Goldman, together with one George Porrazzo, agreed to form a corporation and orally agreed on the financial interest each party to the agreement was to receive in the proposed corporation. Pursuant to this agreement, the defendant corporation was formed and between December 1st, 1926, and December 1st, 1927, plaintiff

advanced to it the sum of $43,055.59. Despite plaintiff's requests and demands, no stock in this corporation was ever issued or delivered to him nor was any other written evidence of his right in or against the corporation given to him.

On or about January 12th, 1932, the plaintiff brought an action against the defendant corporation in the New Jersey Supreme Court to recover the $43,055.59 with interest. Plaintiff elected to treat the money so advanced as a loan to the corporation. During the pendency of this suit, plaintiff alleged, in substance, that each of the defendants fraudulently represented that the affairs of the corporation were in dire and hopeless condition and "that the financial condition of said corporation was so bad that his said claim against it was not worth five cents." Plaintiff further alleged that he did not learn of the fraud so practiced upon him until June, 1935, at which time he learned that the corporation had been in a "flourishing condition" and was "suffering no financial reverses."

Believing and relying upon these false representations, plaintiff alleged that on or about February 15th, 1932, he settled his cause of action against the defendant corporation for the sum of $26,024.15, executed a general release to the defendant corporation and to its president, Samuel Brass, and discontinued the action.

On or about June 29th, 1936, plaintiff began an action in the New York Supreme Court against the three individual defendants, Brass, Hale and Goldman. Plaintiff, in that action, elected to treat his advancement of the $43,055.59 as an investment in the corporation. He alleged that the $26,024.15 which he received in settlement thereof, was in fact, in payment of the sale of his interest in the corporation to the individual defendants and claimed that since the sale was induced by their fraud, he was entitled to damages. Defendants moved their motion for judgment on the pleadings. The court granted the motion on the ground that the plaintiff, having treated the transaction as a loan in his prior suit in New Jersey, was bound by his election and could not, in a suit in the New York court, treat it as an investment. Accordingly, judgment was entered in favor of the defendants.

On May 4th, 1938, plaintiff instituted the present action in the Supreme Court.of our state against the defendant corporation and against the defendants Brass, Hale and Goldman. By this action plaintiff sought to recover the damages which he claimed to have suffered as a result of the fraud which all of the defendants intentionally perpetrated upon him.

Defendants' answer denied the wrongdoing charged. Additionally, it contained a reservation of the right to move at or before the trial for a determination of the legal effect of (a) the execution of the release, (b) the effect of the action in the New Jersey Supreme Court against the corporate defendant, and (c) the action in the New York court. Defendants also made a motion for judgment on the pleadings and for an order striking the complaint on the grounds (1) that the matters in dispute are *res adjudicata* as between the plaintiff and the three individual defendants because of the New York judgment, (2) that the release given to the corporate defendant released both the corporation and the individual defendants, and (3) that the damages claimed are speculative and incapable of ascertainment.

Judge Barbour, who sat below, held in substance as follows: that since the New York judgment was a judgment based on the pleadings, not on the merits, it was not *res adjudicata,* and since the New Jersey action (against the corporation) did not go through to a final judgment, the effect thereof depended entirely upon the release and the discontinuance thereof; that the provisions of *R. S.* 2:98-4 (defenses to sealed instruments or a set-off founded thereon) were without application to the facts of the case at bar; that the fraud charged as to the financial condition of the defendant corporation as a result of which plaintiff released the corporation and its president, Brass, and discontinued his action, constituted fraud in the consideration and not in the execution of the release; and that since plaintiff would not be able, at law, to avoid the efficacy of his release if offered against him, plaintiff could not "bring an action sounding in fraud and deceit, based on the release, itself, but must allege the same kind of fraud and deceit as (would constitute) a defense to an action

on the original money loaned." Judge Barbour made no distinction, in his holdings, between the corporate defendant and the individual defendants—counsel and the judge treating all defendants as if they occupied the same legal status. Upon the stated holdings, judgment was entered in favor of all the defendants and against the plaintiff. From the judgment so entered, plaintiff appeals.

Did the trial judge reach a correct result? A brief analysis of plaintiff's theory of his cause of action will be helpful in reaching the answer to the posed question. Plaintiff stoutly maintains that he is not by this action seeking to recover the balance of the $43,055.59 which he loaned to the defendant corporation. He concedes that such an action, at law, would apparently be barred by the running of the statute of limitations and he further concedes that it would unquestionably be barred by the release. Rather does plaintiff maintain that he seeks to recover, from the defendant corporation and the individual named defendants, the damages which he claims to have suffered by reason of the loss of the value of his original action against the defendant corporation. This loss, plaintiff maintains, resulted from the intentional fraud which all defendants practiced upon him and which fraud caused him to execute the release and discontinue his action.

Notwithstanding the theory thus asserted and notwithstanding that the trial judge construed the facts, as pleaded, to mean that plaintiff, because of defendants' fraud, "accepted a smaller sum than the amount claimed to be due (him)," executed a release and discontinued his action, nevertheless, he held that the fraud alleged was not fraud in the execution of the release but rather in the inducement, in the consideration thereof, and was, therefore, not cognizable at law.

While occasionally criticised (see dissenting opinion by Elmer, J., in *Stryker* v. *Vanderbilt*, 25 *N. J. L.* 482, 496), it is altogether settled that the distinction between fraud in the execution and fraud in the consideration has long been acknowledged and followed in the law courts of our state. *Stryker* v. *Vanderbilt, supra; Dunston Lithograph Co.* v. *Borgo*, 84 *Id.* 623; 87 *Atl. Rep.* 334; *McDonald* v. *Central Railroad Co.*, 89 *N. J. L.* 251; 98 *Atl. Rep.* 391; *Fivey* v.

*Pennsylvania Railroad Co.,* 67 *N. J. L.* 627; 52 *Atl. Rep.* 472. It is likewise the settled law that upon the execution of a release, the presumption is that the party who signed it read, understood and assented thereto. This presumption is conclusive against the party signing same unless his signature was obtained by fraud or imposition practiced upon him with the intention of deceiving him as to the purport of the paper signed. To avoid the consequences of a release pleaded by a defendant in an action at law, plaintiff must base his attack upon the fraud or deceit of the party who procured its execution and not upon plaintiff's failure to comprehend the significance or effect of his act in signing it. *Fagan* v. *Central Railroad Co.,* 94 *N. J. L.* 454; 111 *Atl. Rep.* 32. In the absence of fraud in the execution, the binding signature of the plaintiff has been considered conclusive. *Fivey* v. *Pennsylvania Railroad Co., supra; Cf. McKenna* v. *Montclair Police, &c. Commission,* 121 *N. J. L.* 206, 209; 1 *Atl. Rep.* (2d) 756; *Paruch* v. *Rasiewicz,* 124 *N. J. L.* 356, 359; 12 *Atl. Rep.* (2d) 141, and *R. S.* 2:98-4.

True, in the instant case, plaintiff does not seek to avoid the effect of a release pleaded by a defendant as was sought in the cited cases, but it is equally true that his affirmance of his release, which he himself pleaded, and his effort to recover damages resulting from the fraud practiced upon him, clearly relate, as the judge below held, to fraud in the consideration and not fraud in the execution of the release.

1. *As between the plaintiff and the parties to the release.* In two very early cases in the Supreme Court there appeared some *dicta* to the effect that a plaintiff might recover "by an action on the case" for deceit when fraud in the consideration was present. *Stryker* v. *Vanderbilt, supra* (at *p.* 493) ; *Wakeman* v. *Illingsworth,* 40 *N. J..L.* 431 (at *p.* 434). Such a holding, however, so far as the parties to the release are concerned, would, in substance, completely nullify our well established principle of refusing to determine, at law, questions of fraud in the consideration. The plaintiff will not be permitted, merely by affirming the release and changing the theory of his action, to vest the law courts with control over questions heretofore not determined by them. Plaintiff may

not accomplish indirectly what he is forbidden to accomplish directly. There being no fraud in the execution, the release, as between the parties to it, must stand as conclusive and binding on them in law. (For the sharp line of distinction between the theory of relief in law and in equity, see dissenting opinion of Mr. Justice Garrison in *McDonald* v. *Central Railroad Co.,* 89 *N. J. L.* 251 (at *p.* 254); 98 *Atl. Rep.* 391, 392.)

2. *As between the plaintiff and those not parties to the release.* As we have already seen, neither Frank Hale nor Harold Goldman was a party to the release in question. They were strangers thereto. Notwithstanding that circumstance the trial judge treated them on the same footing as he treated the defendant corporation and Samuel Brass who were the only parties to whom the release was executed. In so doing, we think, the trial judge fell into reversible error.

It is elementary that in an action for deceit the complaint must show, "with reasonable certainty, * * * not only what the fraud was by which he has been injured, but also its connection with the alleged damage, so that it may appear judicially to the court that the fraud and the damage sustain to each other the relation of cause and effect, or, at least, that the one might have resulted directly from the other." *Byard* v. *Holmes,* 34 *N. J. L.* 296, 297. As was pointed out by Mr. Justice Parker in *Boyd* v. *Schussler,* 81 *Id.* 275 (at *p.* 276); 80 *Atl. Rep.* 107, "* * * in an action of this kind the declaration must show that the damage to the plaintiff was a natural result of the wrongful act of the defendant."

The allegations of the complaint sufficiently set forth a cause of action for deceit within the adjudication of the cited cases. *Cf. Williston on Contracts,* § 1524.

3. The issues raised by this cause of action are clearly not *res adjudicata* because of the New York judgment, which judgment was based solely on the pleadings and not on the merits.

We have examined all other points argued and find them to be without merit.

Accordingly, the judgment as to defendants National Grain Yeast Corporation and Samuel Brass is affirmed, with costs;

the judgment as to Frank Hale and Harold Goldman is reversed; a *venire de novo* is awarded as to them; costs are to abide the event.

For *affirmance as to National Grain Yeast Corp, and Brass*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFS-KEIL, HAGUE, JJ. 12.

For *reversal as to Hale and Goldman*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, HAGUE, JJ. 12.

For *reversal in toto*—DONGES, RAFFERTY, JJ. 2.